FILED
GREAT FALLS DIV.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA '06 APR 24  AM 11 25

BUTTE DIVISION

PATRICK E. DUFFY, CLERK

BY _____
DEPUTY CLERK

MARTY A. BOSCH,                    )

              Plaintiff,           )    CV-05-43-BU-SEH

    vs.                            )    FINDINGS AND RECOMMENDATION
                                        OF U.S. MAGISTRATE JUDGE
JO ANNE B. BARNHART,               )
Commissioner of Social
Security,                          )

              Defendant.           )

Plaintiff Marty A. Bosch ("Bosch") instituted this action

to obtain judicial review of the decision of Defendant,

Commissioner of Social Security ("Commissioner"), denying his

applications for disability insurance benefits ("DIB") under

Title II and Supplemental Security Income ("SSI") benefits under

Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§

401-433, 1381-1383c, respectively.  By Order filed July 29,

2005, U.S. District Judge Sam E. Haddon referred this case to

the undersigned for all pretrial proceedings pursuant to 28

U.S.C. § 636(b)(1)(A), including submission of proposed findings

and recommendations.  See Court's Doc. No. 2.

Now pending before the Court are the parties' cross-motions

for summary judgment.  See Court's Doc. No. 7 (Bosch's motion)

and Court's Doc. No. 8 (Commissioner's motion).  Having

considered the issues presented by the parties, together with

the administrative record, the Court hereby recommends that the Commissioner's decision be affirmed, that the Commissioner's motion be granted and that Bosch's motion be denied.

## I.   *PROCEDURAL BACKGROUND*:

Since 2001, Bosch has applied for disability benefits three times. Bosch first filed for benefits on February 9, 2001, claiming an onset date of December 24, 1999. *Tr. at 21-33*. The Social Security Administration ("SSA") denied his application initially and upon reconsideration. *Id.* An Administrative Law Judge ("ALJ") denied his application on January 28, 2002. *Tr. at 24-30*. The Appeals Council denied his request for review on April 3, 2002. *Tr. at 12c*.

On July 10 and 18, 2002, Bosch filed for benefits for a second time. *Tr. at 62-64; 259-62*. Again, the SSA denied his applications initially and, on November 7, 2002, upon reconsideration. *Tr. at 34-35; 39-42; 45-47; 263-71*. Bosch did not further pursue these applications.

On May 2, 2003, Bosch filed applications for benefits for a third time. *Tr. at 65-67; 273-76*. It is from these applications that this case arose. Bosch again alleged that he became disabled on December 24, 1999. *Id.* The SSA denied his applications initially, and upon reconsideration. *Tr. at 36-38; 54-55; 277-85*. After an administrative hearing held on November 5, 2004, (*Tr. at 291-336*), at which Bosch appeared with counsel,

2

the ALJ found that Bosch was not disabled within the meaning of
the Act because he did not have a medically determinable severe
impairment and, alternatively, because he could perform a range
of sedentary work that includes a significant number of jobs in
the national economy. *Tr. at 12j, 12k*. The Appeals Council
declined to review the ALJ's determination *(Tr. at 7-10)*, making
it the Commissioner's final decision for purposes of judicial
review. 20 C.F.R. §§ 404.981, 416.1481 (2005). Jurisdiction
vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.  *STANDARD OF REVIEW:*

This Court's review is limited. The Court may set aside
the Commissioner's decision only where the decision is not
supported by substantial evidence or where the decision is based
on legal error. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1
(9th Cir. 2005) (citation omitted); Thomas v. Barnhart, 278 F.3d
947, 954 (9th Cir. 2002) (citations and internal quotation marks
omitted). Substantial evidence is "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971);
Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).
Substantial evidence also has been described as "more than a
mere scintilla" but "less than a preponderance." Sandeqathe v.
Chater, 108 F.3d 978, 980 (9th Cir. 1997). The District Court
must consider the record as a whole, weighing both the evidence

3

that supports and detracts from the Commissioner's conclusion. Green v. Heckler, 803 F.2d 528, 530 (9th Cir. 1986) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985)). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citation omitted).

### III. *BURDEN OF PROOF*

A claimant is disabled for purposes of the Social Security Act if: (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment or impairments are of such severity that, considering the claimant's age, education and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." Schneider v. Commr. of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process.

4

Corrao v. Shalala, 20 F.3d 943, 946 (9th Cir. 1994) (citing 42

U.S.C. § 1382C(a)(3)).

1. The claimant must first show that he or she is not currently engaged in substantial gainful activity. Id.

2. If not so engaged, the claimant must next show that he or she has a severe impairment. Id.

3. The claimant is conclusively presumed disabled if his or her impairments are equivalent to one on the list of impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.

4. If the claimant does not have a listed impairment, then the claimant must establish a prima facie case of disability by showing an inability to engage in past work because of the medical impairments. Corrao, 20 F.3d at 946.

5. Upon such a showing, the burden then shifts to the Commissioner to prove that plaintiff can engage in other types of substantial gainful work existing in the national economy given the claimant's age, education, work experience and residual functional capacity. Jones, 760 F.2d at 995.

If the Commissioner finds that a claimant is disabled or not

disabled at any point in this process, the review process is

terminated. Corrao, 20 F.3d at 946.

## IV. *DISCUSSION*

From a review of the evidence of record, and after

considering the testimony presented at the hearing held on

November 5, 2004, the ALJ followed the five-step sequential

evaluation process for evaluating Bosch's claim. First, the ALJ

found that Bosch had not engaged in substantial gainful activity

since his alleged onset date of December 24, 1999. *Tr. at 12d,*

5

12j *(Finding No. 2)*.

Second, the ALJ found that Bosch has no medically determinable impairment. *Tr. at 12d*. Although Bosch alleged disability due to the residuals of a groin injury, the ALJ noted, "there is no diagnosed condition of record." *Id*. Thus, the ALJ found, Bosch has no impairment that is "severe" as that term is defined by the Act or in the regulations. *Tr. at 12d, 12j (Finding No. 3)*.

Despite her conclusion with respect to the second step in the five-step sequential evaluation process, the ALJ proceeded to the third, fourth and fifth steps. At the third step, in light of her conclusion that Bosch has no severe impairment, the ALJ necessarily found that he has no impairment or combination of impairments that meets or equals the severity of any impairment described in the Listing of Impairments, which are found in Appendix 1, Subpart P, Regulations No. 4. *Tr. at 12d, 12j (Finding No. 4)*. Fourth, the ALJ determined that Bosch is unable to perform his past relevant work, which had been medium to heavy in exertional level. *Tr. at 12i, 12k (Finding No. 7)*. Fifth, the ALJ found that Bosch has the residual functional capacity ("RFC") to perform a range of sedentary work, examples of which include work as an assembler, food and beverage order clerk, addresser and grinding machine operator. *Tr. at 12j, 12k (Finding No. 12)*.

In seeking reversal of the ALJ's decision, Bosch argues that the ALJ erred in the follow six ways: (1) she ignored record evidence of "changed circumstances" and new and material evidence that directly impacts Bosch's RFC, *Bosch's Opening Br. at 4-5*; (2) she found that Bosch has no severe impairment, a finding contrary to an ALJ's finding on January 28, 2002, with no new or material evidence to support the contrary finding, *id. at 6*; (3) she ignored the severity of Bosch's impairment, *id. at 6-11*; (4) she ignored the uncontradicted opinions of Bosch's treating physicians, *id. at 11-13*; (5) she improperly rejected Bosch's testimony, *id. at 13-17*; and (6) she improperly found that Bosch could work, which finding is contrary to the opinions of Drs. Martin and Rafferty, *id. at 18*.

The Commissioner argues that substantial evidence supports the ALJ's conclusions that Bosch: (1) did not have a continuing severe impairment during the relevant time period, *Comm.'s Br. at 5-6*; and (2) did not establish changed circumstances to rebut the presumption of continuing nondisability that attached following determination of Bosch's prior claims for benefits, *id*. The Commissioner also argues that substantial evidence, both medical and nonmedical, supports the ALJ's alternative conclusion that Bosch retained the RFC to perform sedentary jobs that exist in significant numbers in the national economy. *Id. at 6-14*. Finally, the Commissioner refutes each of Bosch's

7

individual allegations of error. *Id.* at *14-19*.

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the decision is based on legal error. For the reasons set forth below, the Court finds that the Commissioner's decision is based on substantial evidence in the record, and is free of legal error.

## A.  *Presumption of Continuing Nondisability*.

In the Ninth Circuit, res judicata applies to the Commissioner's final decisions regarding disability. Taylor v. Heckler, 765 F.2d 872, 876 (9th Cir. 1985). When the SSA denies a claim for disability benefits and the claimant does not appeal, the decision denying benefits becomes binding on all parties and creates "a presumption of continuing non-disability." Id. at 875. However, res judicata applies "less rigidly" in administrative proceedings than in judicial proceedings. Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) Thus, to overcome the presumption, the claimant must prove only "changed circumstances" that show a greater disability. Taylor, 765 F.2d at 875 (quoting Booz v. Secretary, 734 F.2d 1278, 1379-80 (9th Cir. 1984)); Chavez, 844 F.2d at 693.

To demonstrate "changed circumstances," a claimant could show that the severity of his or her impairment has increased since the unfavorable decision. Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1996). However, as the Ninth Circuit noted in

8

Lester, demonstrating an increase in the severity of his or her

impairment is not the only way by which a claimant can show

"changed circumstances" sufficient to preclude application of

res judicata. Rather, the court noted:

> Other changes suffice. For example, a change in the
> claimant's age category, as defined in the Medical-
> Vocational Guidelines, constitutes a changed
> circumstance that precludes the application of res
> judicata. Chavez v. Bowen, 844 F.2d 691, 693 (9th
> Cir. 1988). In addition, the Commissioner may not
> apply res judicata where the claimant raises a new
> issue, such as the existence of an impairment not
> considered in the previous application. Gregory v.
> Bowen, 844 F.2d [664,] 666 [(9th Cir. 1988)]. Nor is
> res judicata to be applied where the claimant was
> unrepresented by counsel at the time of the prior
> claim. Id.

Lester, 81 F.3d at 827-28.

In the case at hand, the ALJ addressed the issue of whether

a presumption of continuing nondisability applied to Bosch's

claim for benefits in light of the denials of his two previous

attempts to receive benefits. The ALJ expressly found as

follows:

> [T]here is no indication of any change in
> circumstances related to the claimant's age category,
> there is no evidence of an increase in the severity of
> his impairments, there is no indication of the alleged
> existence of any impairment not previously considered,
> and there has been no change in the criteria for
> determining disability.

Tr. at 12d.

Bosch argues that the ALJ erred in concluding that there is

no evidence of an increase in the severity of his impairment.

Bosch points to two letters from Wayne R. Martin, M.D., (*Tr. at 251-53*) and a letter (*Tr. at 242*) and a treatment note (*Tr. at 247*) authored by Michael Rafferty, M.D. *Bosch's Opening Br. at 4-5.* Both doctors were Bosch's treating physicians. Both physicians opined, Bosch argues, that his impairments increased in severity subsequent to the SSA's most recent decision denying him benefits. *Id.* Bosch argues that the physicians state that he has functional limitations, such as an inability to stand or sit for more than short periods of time and that he must lay down. He argues that this evidence is new and material and relates to his functional capacity. *Id.*[1]

Having reviewed the entire record, the Court concludes that Bosch demonstrated "changed circumstances" under relevant Ninth Circuit authority sufficient to rebut the presumption of continuing nondisability. As Bosch argues, Drs. Martin and Rafferty both rendered opinions with respect to Bosch's condition that showed an increase in the severity of his impairment.

For example, in his letter dated April 28, 2003, Dr. Martin

---

[1]Although he does not explain his reliance upon them in arguing "changed circumstances," Bosch also points to the following other pages in the record: Tr. 193, 200, 206, 208 and 211. *Bosch's Opening Br. at 4.* The Court has reviewed them, and finds Bosch's reliance upon them misplaced. Tr. 193 contains treatment notes from Dr. Martin from June of 2003. Nothing contained therein indicates an increase in the severity of Bosch's impairment. Tr. 200 contains treatment notes from Dr. Martin from July and August of 2002. Again, the notes contain no indication that the severity of Bosch's condition has increased. Tr. 206, 208 and 211 contain treatment notes from Dr. Martin. All notes pre-date the ALJ's January 28, 2002, decision denying Bosch benefits. Thus, they are not pertinent to the issue of "changed circumstances" following that decision.

concedes that he cannot "totally explain Mr. Bosch's pain," but goes on to note that it "is similar to reflex sympathetic dystrophy or a neuropathic type pain disorder, and he has been unable to work and is unable to work at the present time." *Tr. at 253*. He also noted that Bosch

> is unable to stand any length of time without having increasing abdominal pain which goes down into his right scrotum.  If he tries to go through the pain, then he is incapacitated and ends up having to lay down.  He is unable to sit for more than four hours a day without again having pain which necessitates his lying down.

*Id.*

Next, in his letter dated September 16, 2003, Dr. Martin again states that the "multiple tests" conducted on Bosch were "nondiagnostic," but notes that Bosch

> continues to have persistent pain which precludes him from being in any position longer than an hour or so, whether this be standing or sitting, and he has to lay down.  This has, in a sense, prevented him from having any gainful employment and, due to the chronicity of it, I doubt if he is going to be able to.
>
> *       *       *       *
>
> I don't feel that Mr. Bosch is going to be able to do any type of work, as his activities of daily living have become extremely difficult and painful for him.

*Tr. at 221-22; 251-52.*

Similarly, Dr. Rafferty, in a letter dated March 30, 2004, noted that Bosch "has seen multiple doctors, including Neurologist, Pain Management, Urology, Surgery and Medicine. All have found no exact cause to his illness[.]"  *Tr. at 242.*

11

Dr. Rafferty further noted:

> Mr. Bosch has been unable to be employed since the
> injury due to his pain syndrome. Unfortunately, I do
> not expect him to have much improvement. The amount
> of pain and functional disability this discomfort
> causes precludes him from employment.

*Id.*

In this Court's opinion, the foregoing opinions of Drs.
Martin and Rafferty satisfy Bosch's burden to show "changed
circumstances" sufficient to rebut the presumption of continuing
nondisability. Again, courts are to apply the res judicata
doctrine less rigidly to administrative determinations than to
determinations made by courts of law. Here, the foregoing
opinions show that Bosch's limitations could be attributable to
a "pain syndrome" that was not necessarily a component in the
previous administrative determination. Further, the foregoing
opinions indicate greater functional limitations for Bosch,
including an inability to stand or sit for more than an hour at
a time because of pain. The ALJ erred in determining that this
greater functional limitation did not amount to "changed
circumstances."

Although the ALJ erred with respect to the issue of
"changed circumstances," the matter does not end. For the
reasons discussed below, the Court concludes that any error was
harmless because the ALJ based her ultimate decision to deny
Bosch disability upon substantial evidence in the record, and

12

any other error also was harmless.  See Burch v. Barnhart, 400
F.3d 676, 679 (9ᵗʰ Cir. 2005) ("A decision of the ALJ will not
be reversed for errors that are harmless.").

### B.   *Finding of No "Severe" Impairment*.

Bosch argues that the ALJ erred when she found that Bosch
has no severe impairment.  He argues that this finding is
contrary to another ALJ's finding on January 28, 2002, that
Bosch had a severe groin injury.  The Court disagrees that the
ALJ's finding amounts to reversible error.

Although the ALJ determined that Bosch has no medically
determinable impairment that is severe as defined by the Act,
she went on to conclude, in the alternative, that Bosch has the
RFC to perform some work regardless of the severity of his
alleged impairment.  In reaching this conclusion, the ALJ
employed the latter steps in the five-step sequential evaluation
process and engaged in detailed analysis.  In light of the ALJ's
alternative conclusion, which the Court finds is based on
substantial evidence in the record, Bosch's argument that the
ALJ erred is unpersuasive.  Any error arising from the ALJ's
determination that Bosch has no medically determinable
impairment is harmless and does not warrant reversal.  Burch,
400 F.3d at 679.

C.     *Severity of Bosch's Impairment*.

Bosch next argues that the ALJ "ignored the severity of [his] impairment." Again, the Court disagrees.

In her written decision, the ALJ thoroughly detailed the medical evidence of record. *Tr. at 12e-12i.*[2] The ALJ noted that the treating and examining physicians and other medical care providers found no significant functional limitations other than those based on Bosch's subjective complaints, reported generally normal physical and diagnostic findings, and were unable to determine the etiology or severity of his reported pain symptoms. *Id.* For example, the ALJ noted:

(1) on March 19, 2002, Bosch saw nurse practitioner Chris McGuire, who observed no pain behavior and found the physical examination to be within normal limits, with unclear etiology of Bosch's pain complaints;

(2) on May 7, 2002, Dr. Martin reported that Bosch continued to report having chronic abdominal pain despite multiple procedures, including two pain clinics;

(3) on July 7, 2002, Dr. Martin noted normal x-rays for Bosch;

(4) on February 19, 2003, Dr. Martin indicated some concern about Bosch's continued use of narcotics, particularly in light of their street value;

(5) on April 15, 2003, Dr. Martin again expressed concern over Bosch's use of narcotics;

(6) in a report dated April 28, 2003, Dr. Martin stated

---

[2]The ALJ's summary of Bosch's relevant medical history and analysis thereof indicate to the Court the high degree of care that the ALJ employed with respect to her evaluation of Bosch's alleged  impairments, and their effect on his ability to work.  The ALJ made no aberrant conclusions in light of the medical evidence of record.

that he was uncertain about the etiology and chronicity of Bosch's pain, and indicated he was trying to wean Bosch off of narcotic analgesics;

(7) on September 16, 2003, Dr. Martin reported that multiple tests, including ultrasound, abdominal CT and MRI of the abdominal wall, had all been nondiagnostic; and

(8) on February 16, 2004, Bosch had established care with Dr. Rafferty, who examined Bosch and found the examination to be normal.

*Id.*

The Court concludes that it was reasonable for the ALJ to conclude from this and other evidence of record that Bosch's condition did not interfere with his functioning to such a degree that it rendered him disabled under the Act. It is clear from the ALJ's opinion that she thoroughly considered all of the evidence of record and did not, as Bosch argues, "ignore" evidence regarding the severity of his impairments.

In this Court's opinion, Bosch asks the Court to reweigh the medical evidence, and to arrive at a conclusion different from that of the ALJ. The Court is not permitted to do so. Even in those instances in which "the evidence is susceptible to more than one rational interpretation," the Court must uphold the ALJ's interpretation. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). Here, the evidence as a whole is reasonably susceptible to the interpretation at which the ALJ ultimately arrived. The ALJ did not err.

15

### D. ALJ's Consideration of Treating Physicians' Opinions.

Bosch next argues that the ALJ erred in failing to properly reject the opinions of Drs. Martin and Rafferty. The Court disagrees.

"As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons. [The Ninth Circuit Court of Appeals has] also held that 'clear and convincing' reasons are required to reject the treating doctor's ultimate conclusions. Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (citations omitted).

In the case at hand, as noted *supra*, the ALJ thoroughly discussed the medical evidence of record, including reports from Drs. Martin and Rafferty. The ALJ specifically noted that both of these treating physicians and other medical providers could not establish the exact cause of Bosch's pain complaints. *Tr. at 12i.* This allowed the ALJ reasonably to infer that Bosch had no medically determinable impairment that produced functional

16

limitations so severe as to preclude all work activities.

Also, the ALJ noted that Dr. Martin opined that Bosch's condition "was similar to reflex sympathetic dystrophy." *Id*. The ALJ assigned no weight to that opinion, however, because "similarities to a condition are not actual diagnoses." *Id*. The ALJ was permitted to resolve this conflict in the interpretation of the evidence. Thomas, 278 F.3d at 954.

The ALJ also emphasized that Dr. Rafferty had determined no exact cause of Bosch's pain complaints, but nevertheless opined that Bosch was unemployable based solely on Bosch's subjective pain complaints. *Id*. The ALJ declined to afford this opinion great weight, which she was permitted to do. Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may reject a treating physician's opinion if it is based solely upon a claimant's subjective complaints).

In light of the record as a whole, the Court concludes that the ALJ did not err with respect to her consideration of the opinions of Bosch's treating physicians. For the reasons discussed herein, the Court finds that the ALJ offered clear and convincing reasons for rejecting the opinions of Drs. Martin and Rafferty to the extent they concluded that Bosch's functional limitations are so severe as to preclude any work activity. The ALJ did not err.

17

## *E.    Bosch's Credibility*.

Bosch argues that the ALJ erred in finding him not credible.    In light of the evidence of record, Bosch's argument is unpersuasive.

When considering a claimant's subjective symptom testimony, an ALJ must perform a two-stage analysis: (1) the Cotton test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms.    Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (referring to Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).    The Cotton test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom.    Smolen, 80 F.3d at 1281-82 (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) and Cotton, 799 F.2d at 1407-08); 20 C.F.R. § 404.1529(a) and (b).

If the Cotton test is satisfied, and there is no evidence of malingering, then the ALJ can reject subjective testimony of the severity of the symptoms only by citing specific, clear and convincing reasons for doing so.    Smolen, at 1283-84 (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)).    To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the

18

claimant's daily activities.  Id., at 1284; Fair v. Bowen, 885

F.2d 597, 603-604 (9th Cir. 1989).  However, "[g]eneral findings

are insufficient; rather, the ALJ must identify what testimony

is not credible and what evidence undermines the claimant's

complaint."  Reddick v. Chater. 157 F.3d 715, 722 (9th Cir.

1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir.

1995)).  The ALJ must also consider the factors set forth in SSR

88-13 including:

   A.   The nature, location, onset, duration, frequency,
        radiation, and intensity of any pain;

   B.   Precipitating and aggravating factors (e.g., movement,
        activity, environmental conditions);

   C.   Type, dosage, effectiveness, and adverse side-effects
        of any pain medication;

   D.   Treatment, other than medication, for relief of pain;

   E.   Functional restrictions; and

   F.   The Claimant's daily activities.

Id. at 727; 20 C.F.R. § 404.1529(c).

     Here, the ALJ found that Bosch had no severe impairment.

Tr. at 12j.  However, the ALJ proceeded to evaluate Bosch's

claim as though he had impairments that could reasonably be

expected to produce some degree of symptom.  By so proceeding,

the ALJ, in determining that Bosch was not credible with respect

to his symptoms and functional limitations, had to cite

specific, clear and convincing reasons.  Smolen, 80 F.3d at

1283-84.  The Court finds that she did.

First, the ALJ pointed to inconsistencies between Bosch's representations as to his symptoms and the objective medical evidence of record. She noted that, despite Bosch's subjective complaints, "there is no medically determinable impairment, and no doctor has found any underlying cause for his pain." *Tr. at 12h.* The ALJ acknowledged that Bosch sustained an injury to his groin, but noted that his condition improved quickly afterwards. *Id.* She pointed to medical evidence of record to support this conclusion. *Id.; see also id.* at 12E ("By January 5, 2000, the claimant reported that 'everything was pretty much back to normal' with no pain or discomfort"). The ALJ also noted in her review that in April 2000, D.R. Sullivan, PA-C, considered claimant's alleged pain and lifting limitations, and stated in his office notes that "he was unable to document these limitations as a reality, and he suggested that the claimant obtain a second opinion." *Id.*

Second, the ALJ noted evidence of Bosch's motivation for seeking disability benefits beyond severe functional limitations imposed by his condition. For example, the ALJ noted that Bosch's "condition was not causing him significant problems after [his injury and subsequent treatment and] he did not allege severe pain until after he hired counsel in 2000 ... when his primary objective was to discuss his injury in an attempt to receive compensation from the business owner where he fell."

*Id.*

Third, the ALJ noted that at least some of Bosch's pursuit of medical treatment may have been motivated by something other than a desire for treatment of his groin injury. Specifically, the ALJ noted that, in the months after Bosch again injured his groin in July 2002, Bosch "continued to request narcotic pain medication, and Dr. Martin repeatedly voiced concerns over misuse. In fact, the record is rife with [Bosch's] drug seeking behavior." *Tr. at 12i*.

All of the foregoing observations indicate that the ALJ applied ordinary credibility evaluation techniques, which she was permitted to do, in finding Bosch not credible. <u>Smolen,</u> at 1283-84 (citing <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993)). From all of the ALJ's findings, which the Court believes are consistent with the evidence of record, the ALJ was permitted to draw the inference that Bosch's testimony with respect to the level of severity of his symptoms was not credible. Again, the Court is not permitted to substitute its own interpretation of the evidence for the ALJ's interpretation. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." <u>Thomas</u>, 278 F.3d at 954 (citation omitted). Based upon careful review of the record, the Court concludes that the ALJ provided specific, clear and

21

convincing reasons for her conclusion with respect to Bosch's
credibility.

## *F.   ALJ's Determination that Bosch Is Able to Work*.

Finally, Bosch argues that the ALJ erred because, in
determining that there exists other work that Bosch could
perform, the ALJ relied on assumptions about Bosch's abilities
that were contrary to the opinions of Drs. Martin and Rafferty.
The Court is unpersuaded by this argument.

As discussed in detail *supra*, the ALJ properly rejected the
opinions of Drs. Martin and Rafferty that Bosch could not
perform any work.  Also, the Court has determined that the ALJ
properly found Bosch not credible to the extent he claims that
the limitations imposed by his groin injury prevent him from
performing any substantial gainful activity.  Thus, when the ALJ
considered whether there are jobs in significant numbers in the
national economy that Bosch can perform, she was not required to
include in her evaluation properly rejected opinions of the
physicians and Bosch's own subjective complaints.  See, e.g.,
Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("An
ALJ is free to accept or reject restrictions in a hypothetical
question that are not supported by substantial evidence.").
Thus, the ALJ did not err.

## *V.   CONCLUSION*:

For the foregoing reasons,

22

**IT IS RECOMMENDED** that Bosch's Motion for Summary Judgment (Court's Doc. No. 7) be DENIED and that the Commissioner's Cross-Motion for Summary Judgment (Court's Doc. No. 8) be GRANTED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of the U.S. Magistrate Judge upon the parties.  The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DATED this 24 day of April, 2006.

Carolyn S. Ostby
United States Magistrate Judge